## ABIJAH H. PEIRCE *versus* JOEL GODDARD.

Where a lot of land and a dwellinghouse thereon, were mortgaged, and the mortgager subsequently removed the house and used a portion of the materials, together with new materials, in the erecðion of a house on another lot belonging to him, which, together with the house, he afterwards, for a valuable consideration, conveyed to a third person, it was *held*, that as the materials used in the construction of the new house became a part of the freehold, the right of property therein vested in such third person by the conveyance of the land to him ; and that therefore trover could not be maintained against him by the mortgagee, either for the new house or for the old materials used in its construction.

TROVER. The writ contained two counts, one, for the conversion of a dwellinghouse, and the other, for the conversion of the materials of a dwellinghouse.

By an agreed statement of facts it appeared, that Oliver G. Davenport, on the 16th of January, 1836, mortgaged to the plaintiff a lot of land in Templeton, with a dwellinghouse thereon, to secure the payment of a promissory note of that date for the sum of $ 450, upon which there was still due the sum of about $ 270 ; that after such mortgage was made, Davenport, having purchased another lot of land in Templeton, undertook to remove the house to such lot ; but that after having removed it from 60 to 80 rods from its former site, he took it all to pieces and carried the materials to the subsequently purchased lot, and there erected a house of the same dimensions as the former house ; that in the construction of the new house, he made use of the materials of the old house, so far as they would answer the purpose, together with new materials, which were furnished by himself ; that the removal of the old house and the erection of the new one, were known to the defendant ; but there was no evidence that he knew of the mortgage, other than what resulted from the record thereof.

It further appeared, that when the new house was completed, Davenport, for a valuable consideration, conveyed the lot on which it stood, together with the house, to the defendant, who occupied the same from that time until after the commencement of this action, when he sold the same to a third person.

A nonsuit or a default was to be entered, as the Court should determine.

*Washburn* and *Hartshorn*, for the plaintiff, to the point, that        *Oct. 5th*

Peirce
v.
Goddard.

Davenport, as mortgager in possession, was to be regarded as the tenant of the plaintiff, and that, therefore, the plaintiff might maintain trover for the property so removed by him, cited *Patridge* v. *Bere*, 5 Barn. & Ald. 604 ; *Groton* v. *Boxborough*, 6 Mass. R. 50 ; *Hunt* v. *Hunt*, 14 Pick. 374 ; *Pettengill* v. *Evans*, 5 N. Hamp. R. 54 ; *West* v. *Treude*, Cro. Car. 187 ; *Higgon* v. *Mortimer*, 6 Carr. & Payne, 616 ; *Smith* v. *Goodwin*, 2 Greenleaf, 173 ; *Farrant* v. *Thompson*, 5 Barn. & Ald. 826 ; *Ayer* v. *Bartlett*, 9 Pick. 156 ; *Woodruff* v. *Halsey*, 8 Pick. 335 ; *Union Bank* v. *Emerson*, 15 Mass. R. 159 ; *Stowell* v. *Pike*, 2 Greenleaf, 387 ; that Davenport acquired no right to the house by removing it, the identity of the materials being proved, *Betts* v. *Lee*, 5 Johns. R. 348 ; *Curtis* v. *Groat*, 6 Johns. R. 168 ; 2 Kent's Comm. (2d ed.) 363 ; that he did not acquire any right to the materials by adding others thereto, or by his own labor in rebuilding the house, 2 Kent's Comm. (2d ed.) 364 ; *Babcock* v. *Gill*, 10 Johns. R. 287 ; that the plaintiff was not divested of his property in the house, by its being rebuilt, against his consent, on the land of Davenport, *Emerson* v. *Fisk*, 6 Greenleaf, 204 ; *Russell* v. *Richards*, 1 Fairfield, 429 ; and that Davenport, being a tortfeasor, could give no better title that he possessed himself, and that the plaintiff might recover in this action, although the defendant did not know of the tortious taking, *Higginson* v. *York*, 5 Mass. R. 341.

C. *Allen*, for the defendant, to the point, that the mortgager was not to be regarded as a mere tenant at will of the mortgagee, but was deemed to be the owner, so long as he remained in possession, cited *Hatch* v. *Dwight*, 17 Mass. R. 289 ; *Mayo* v. *Fletcher*, 14 Pick. 525.

*Oct. 22d.*     WILDE J. drew up the opinion of the Court. This action is submitted on an agreed statement of facts, by which it appears, that one Davenport, being the owner of a lot of land with a dwellinghouse thereon, mortgaged the same to the plaintiff; that afterwards he took down the house, and with the materials partly, and partly with new materials, built a new house on another lot of his at some distance ; and that after the new house was completed, he, for a valuable consideration, sold the last mentioned lot and house to the defendant.

There are two counts in the declaration, one, for the conversion of the newly erected house, and the other, for the conversion of the materials with which it was built, belonging to the old house.

The plaintiff's counsel insist, that the old house was the property of the plaintiff, and that Davenport had no right to take it down, and could not therefore acquire any property in the materials by such a wrongful act ; that the new house, being built with the materials from the old house in part, became the property of the plaintiff, although new materials were added, by right of accession ; and that Davenport, having no property in the house, as against the plaintiff, could convey no title to it to the defendant.

That Davenport is responsible for taking down and removing the old house, cannot admit of a doubt ; but it does not follow, that the property in the new house vested in the plaintiff.

The rules of law, by which the right of property may be acquired by accession or adjunction, were principally derived from the civil law, but have been long sanctioned by the courts of England and of this country as established principles of law.

The general rule is, that the owner of property, whether the property be movable or immovable, has the right to that which is united to it by accession or adjunction. But by the law of England as well as by the civil law, a trespasser, who wilfully takes the property of another, can acquire no right in it on the principle of accession, but the owner may reclaim it, whatever alteration of form it may have undergone, unless it be changed into a different species and be incapable of being restored to its former state ; and even then the trespasser, by the civil law, could acquire no right by the accession, unless the materials had been taken away in ignorance of their being the property of another. 2 Kent's Comm. 362 ; *Betts* v. *Lee*, 5 Johns. R. 348. But there are exceptions to the general rule.

It is laid down by Molloy as a settled principle of law, that if a man cuts down the trees of another, or takes timber or plank prepared for the erecting or repairing of a dwellinghouse, nay, though some of them are for shipping, and builds a ship, the property follows not the owners but the builders. Mol. de Jure Mar. *lib.* 2, *c.* 1, § 7.

Another similar exception is laid down by Chancellor *Kent* in his Commentaries, which is directly in point in the present case. If, he says, A. builds a house on his own land with the materials of another, the property in the land vests the property in the building by right of accession, and the owner of the land would only be obliged to answer to the owner of the materials for the value of them. 2 Kent's Comm. 360, 361. This principle is fully sustained by the authorities. In Bro. *tit. Property*, *pl.* 23, it is said, that if timber be taken and made into a house, it cannot be reclaimed by the owner ; for the nature of it is changed, and it has become a part of the freehold. In Moore, 20, it was held, that if a man takes trees of another and makes them into boards, still the owner may retake them, but that if a house be made with the timber it is otherwise.

In Popham, 38, this principle is further extended. The plaintiff in that case had mixed his own hay with hay of the defendant on his land, and the defendant took away the hay thus intermixed ; and it was held, that he had a right so to do. But it was also held, that if the plaintiff had taken the defendant's hay and carried it to his house and there intermixed it with his own hay, the defendant could not take back his hay, but would be put to his action against the plaintiff, for taking his hay. If there be any doubt of the doctrine laid down in this case, it does not affect the present case. The doctrine laid down in the former cases is fully supported by the Year Books, 5 *Hen.* 7. 16 ; and I am not aware of any modern decision or authority, in which this old doctrine of the English law has been controverted.

The case of *Russell* v. *Richards*, 1 Fairfield, 429, cited by the plaintiff's counsel, was decided on the ground, that the building in controversy was personal property and had never become a part of the freehold. In the present case it cannot be questioned, that the newly erected dwellinghouse was a part of the freehold, and was the property of Davenport. The materials used in its construction ceased to be personal property, and the owner's property in them was divested as effectually as though they had been destroyed. It is clear, therefore, that the plaintiff could not maintain an action even against Davenport, for the conversion of the new house. And

t is equally clear, that he cannot maintain the present action for the conversion of the materials taken from the old house. The taking down that house and using the materials in the construction of the new building, was the tortious act of Davenport, for which he alone is responsible.

*Plaintiff nonsuit.*