GRACE G. REAVIS, APPELLEE, V. STATE OF NEBRASKA,
APPELLANT: PAWNEE ROYALTY COMPANY, APPELLEE.
300 N. W. 344

FILED OCTOBER 10, 1941. No. 31174.

*Walter R. Johnson, Attorney General,* and *Robert A. Nelson,* for appellant.

*Joseph C. Reavis, Jean M. Johnson* and *John C. Mullen,* for appellee Reavis.

*Archibald J. Weaver,* for appellee Pawnee Royalty Company.

Heard before EBERLY, PAINE, MESSMORE and YEAGER, JJ., and ELLIS, District Judge.

PAINE, J.

This was an action in equity brought by Grace G. Reavis against the state of Nebraska and the Pawnee Royalty Company, a copartnership, to set aside an oil and gas lease issued by the state of Nebraska to the Pawnee Royalty Company upon real estate owned by the plaintiff. The trial court held that the state did not reserve any rights under the deed to plaintiff, and therefore canceled the oil and gas lease given to the Pawnee Royalty Company by the state of Nebraska. The attorney general appeals.

The petition recites in detail how the plaintiff became the owner of a certain 40 acres of land in Richardson county, Nebraska, by deed from the state of Nebraska, and that she gave an oil and gas lease thereon December 21,

1938, and that thereafter the state of Nebraska claimed to have an interest therein, and also gave an oil and gas lease thereon.

The plaintiff makes the state a party to this litigation by virtue of the fourth subdivision of section 27-319, Comp. St. Supp. 1939.

Plaintiff prays that the lease given by the state, as above set out, be canceled and held for naught.

The Pawnee Royalty Company, a copartnership, composed of W. A. Guinn and B. G. Guinn, filed a separate answer, setting out that plaintiff, claiming to be the owner in fee simple of 40 acres of land, gave said company an oil and gas lease thereon; that thereafter said company was advised that the state of Nebraska claimed ownership of any oil and gas located thereon, and upon application the state also issued to the Pawnee Royalty Company an oil and gas lease, dated March 25, 1940. Said company prays the court to determine which is the true owner of said land, and direct to which alleged owner the royalties due by the production of oil and gas should be paid by the Pawnee Royalty Company.

The evidence, including many exhibits, discloses that on February 6, 1882, George E. Dorrington purchased the northeast quarter of the southwest quarter of section 16, township 1, range 16, in Richardson county, Nebraska, for the price of $7 an acre, or $280, paying $28 cash and giving a note, exhibit No. 1, to the state of Nebraska in the sum of $252, with interest at the rate of 6 per cent., payable January 1, 1902, the interest being payable annually.

D. D. Reavis is the husband of the plaintiff, and testified that he had charge of all the transactions for his wife, and that she purchased this 40 acres from Edwin S. Towle in June, 1909, paying $4,000 for the 40 acres, the plaintiff receiving an assignment of the contract of purchase of this 40 acres of school-land from the state of Nebraska, and after she received the assignment of the contract of purchase she secured an extension of payment of said agree-

ment from the state of Nebraska through the county treasurer of Richardson county, Nebraska. This extension was secured through a long distance telephone conversation with the commissioner of public lands and buildings at Lincoln. Mr. Reavis, acting for the plaintiff, told the commissioner he desired to get an extension of the contract which the state made with George E. Dorrington in February, 1882, and he was assured that the extension would be made, and he paid the interest on the school-land contract each year to the county treasurer, and finally secured a deed from the state of Nebraska on November 13, 1922, signed by the governor, secretary of state, and commissioner of public lands and buildings.

The deed, which is exhibit No. 2, recited that it was made in pursuance of law, in accordance with the sale made by the state to George E. Dorrington on February 6, 1882, for the sum of $280, and the original note, exhibit No. 1, was marked paid in full, and surrendered with the deed, the deed being recorded in book J, page 260-A, in the office of the commissioner of public lands and buildings, and being recorded in Richardson county on November 18, 1922, in book 88 of deeds at page 548.

The state of Nebraska in its answer and cross-petition admits that the 40 acres were common-school land given it under the enabling act of congress, and also admits that the 40 acres were sold to George E. Dorrington on February 6, 1882, but that said contract by its terms lapsed and was in default on the day of the execution of the deed to Grace G. Reavis, and that at the time of the execution of the deed it was provided in section 20, art. III of the Constitution of Nebraska of 1920: "The salt springs, coal, oil, minerals or other natural resources on or contained in the land belonging to the state shall never be alienated, but provision may be made by law for the leasing or development of the same."

The state also claims that at the time the extensions of the contract were entered into on January 13, 1902, and on January 13, 1908, section 72-209, Comp. St. 1929, was

in force, having been enacted in 1899, and that this section reads as follows: "At the time of maturity of any sale contract, upon application by the holder thereof, the board of educational lands and funds is hereby empowered to make an extension of the time of final payment of not less than five years nor more than ten years from the date' of such maturity if, in their judgment, the interests of the school fund will be best served thereby and if all interest due thereon has been paid;" and that under this section an extension of a contract for the purchase of school-land could only be made upon application to, and action by, the board of educational lands and funds, and that, where a contract provides the form of notice and application, the same must be in accordance therewith. 17 C. J. S. 929, sec. 450.

The state insists that this court has held that the sale of educational lands is prohibited, except in certain instances specified in section 72-209, Comp. St. 1929, and that the power of the board of educational lands and funds to lease or sell school-lands only exists in so far as it is directed or permitted by the legislature. *Fawn Lake Ranch Co. v. Cumbow,* 102 Neb. 288, 167 N. W. 75.

Our attention is called by the state to the case of *State v. Tanner,* 73 Neb. 104, 102 N. W. 235, being an action in ejectment, holding that it is not competent for the legislature to provide for the disposition of school-lands otherwise than as authorized and directed by the Constitution.

Under authority of the Constitution and act of the legislature as construed in these two decisions, the state claims that a contract for the purchase of school-land could not be extended except by act of the board of educational lands and funds, and that said contract terminated on January 13, 1918.

The state contends that, while Grace G. Reavis continued in possession and paid up the purchase price, no rights existed under the contract issued to George E. Dorrington, and that the act of the board of educational lands and funds in issuing such deed to plaintiff was a new and independent

contract, and that under the constitutional provision in force at that time, and hereinbefore set out, the state of Nebraska had no power to issue a deed without reserving in the state the mineral rights on said land, and that this court must grant to the state the relief asked for in its cross-petition, to wit, that the oil and gas lease executed by Grace G. Reavis on December 21, 1938, to the Pawnee Royalty Company be canceled and held void.

It was found that the George E. Dorrington contract had been lost, and the best evidence of its contents was other contracts issued by the state of about the same date, being surrendered contracts, as the board of educational lands and funds did not begin recording such contracts until May 31, 1887.

The language in exhibit No. 26, being a contract issued to John S. Kirkpatrick, of Broken Bow, provided: "In case the second party, his legal representatives or assigns, shall pay the several sums of money aforesaid punctually and at the times above limited, and shall strictly and literally perform all and singular the agreements and stipulations aforesaid, after their true tenor and intent, then the first party will cause to be made and executed unto the second party, his heirs or assigns (upon request to the board of educational lands and funds and the surrender of this contract), *a deed conveying said premises in fee simple.*"

Has the state a right to change the terms and conditions of the written contract it entered into on February 6, 1882, with George E. Dorrington, who assigned his interest in said contract to Edwin S. Towle, who in turn assigned his interest to the plaintiff?

We do not believe it has, for section 16, art. I, Constitution of Nebraska, 1875, reads: "No bill of attainer, ex post facto law, or law impairing the obligation of contracts * * * shall be passed."

In the discussion of a similar school-land lease, this court said that, while the legislature may change or modify the remedy, it cannot deprive the party of a substantial

right, and held that the new statute was void as to school-land contracts then existing under the Act of 1879. *State v. McPeak,* 31 Neb. 139, 47 N. W. 691.

The law provided how one of these school-land leases should be forfeited. If the purchaser was in default of payment of interest for one year, the commissioner of public lands and buildings could cause notice to be given to such delinquent lessee or purchaser that, if such delinquency was not paid within 90 days from the date of the service of such notice, his lease or sale contract would be declared forfeited by the board of educational lands and funds.

Mr. Sullivan, the secretary of the board, testified in response to question: "Q. Have you ever found anything in that—in your office to indicate or state that the contract entered into by the state of Nebraska with Mr. Dorrington in February, 1882, was forfeited? A. No."

This court had before it a contract for the purchase of school-land in *Cutler v. Meeker,* 71 Neb. 732, 99 N. W. 514, and held: "The interest of a vendee in possession of real estate under a contract of sale, part of the purchase price of the land having been paid, at his death, descends to his heirs, and does not pass to his administrator. It is alienable, descendible and devisable in like manner as if it were real estate held by a legal title."

The state sold the land under contract, the required cash payment being made. The state never canceled said contract, but accepted all payments of interest and principal, and the contract provided that, upon payment in full, the premises should be conveyed in fee simple.

The trial court found: "The court finds that under the evidence the defendant, the state of Nebraska, recognized the title of the plaintiff under the contract and assignments and in effect waived any forfeiture that the defendant, the state of Nebraska, might have; that it did not reserve any rights under the deed it delivered to the plaintiff and in effect affirmed the contract of 1882 and is bound thereby."

This finding of the trial court was right, for the state could not refuse to carry out its contract to give a deed

for the land sold, even though after the contract was given the Constitution of Nebraska was amended, making it illegal to deed away mineral rights on school-land. The state was required to deed exactly what it had contracted to sell.

The state contracted to sell this land, and to give a title in fee simple, which contract was legal. The deed was made in strict compliance with the contract, and the state is bound by it. The restriction written into the Constitution, being section 20, art. III, in 1920, does not apply.

AFFIRMED.